FILED

1 BERNARD C. JASPER (SBN 118479)
2 **ADLI LAW GROUP, P.C.**
3 444 S. Flower Street, Suite 1750
  Los Angeles, CA 90071
4 TELEPHONE (213) 623-6546
5 bernard.jasper@adlilaw.com

2014 JUL 15 PM 3: 16

6

7

8 Attorney for Plaintiff

9

10

11 **UNITED STATES DISTRICT COURT**

12 **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

13

14 LAWRENCE SCHOENFELD, an
   individual;                          CV14-5500 RGK MANx
15
                          Plaintiff,   Case No.:
16                                     Complaint filed:
        vs.
17 ROCKERS GUITARS LTD., an            **COMPLAINT FOR DAMAGES**
   unknown entity; MUSIC GROUND        **FOR:**
18 INC., an unknown entity; VINTAGE       1. **BREACH OF CONTRACT;**
19 AND USED SPECIALIST LONDON,           2. **NEGLIGENT**
   an unknown entity; JUSTIN                **MISREPRESENTATION;**
20 HARRISON, an individual;             3. **BREACH OF CONTRACT;**
21 SAMANTHA HARRISON, an                   **AND**
   individual; AMERICAN EXPRESS        4. **BREACH OF THE IMPLIED**
22 COMPANY, a corporation operating in     **COVENANT OF GOOD**
23 California; AMERICAN EXPRESS           **FAITH AND FAIR DEALING.**
   BANK, FSB, a bank operating in
24 California; AMERICAN EXPRESS
25 CENTURION BANK, a bank operating    **DEMAND FOR JURY TRIAL**
   in California; and DOES I through 10,
26 inclusive.
27
28      Defendants.

                                    1
COMPLAINT FOR BREACH OF CONTRACT AND DAMAGES

Plaintiff Lawrence Schoenfeld ("SHOENFELD") for his Complaint against Defendants Rockers Guitars Ltd. ("ROCKERS"), Music Ground Inc. ("MUSIC GROUND"), Vintage And Used Specialist London ("VINTAGE SPECIALIST"), Justin Harrison ("J HARRISON"), Samantha Harrison ("SJ HARRISON"), American Express Company ("AMEX CO"), American Express Bank FSB ("AMEX BANK"), American Express Centurion Bank ("AMEX CENTURION"), and DOES 1 THROUGH 10 alleges as follows:

## **PARTIES TO THE COMPLAINT**

1.      Plaintiff LAWRENCE SHOENFELD is and at all times referenced herein was residing in Los Angeles County, California.

2.      Defendants JUSTIN HARRISON ("J HARRISON") and SAMANTHA J. HARRISON ("SJ HARRISON") (collectively, "J&SJ HARRISON"), are and at all times referenced herein were wife and husband believed to reside in Yorkshire, England. J&SJ HARRISON are the sole and/or majority owners of Defendants MUSIC GROUND INC., ROCKERS GUITARS LTD., and VINTAGE AND USED SPECIALIST LONDON, (collectively, the "MUSIC CO DEFENDANTS") all of which operate in or around Yorkshire, England. J&SJ HARRISON AND MUSIC CO DEFENDANTS may be collectively referred to as HARRISON DEFENDANTS. JUSTIN HARRISON was previously found guilty of criminal conduct surrounding the acquisition, possession, and/or sale of stolen music equipment.

3.      Defendant AMERICAN EXPRESS COMPANY ("AMEX CO.") is a corporation registered to conduct business in the State of California. Defendants AMERICAN EXPRESS BANK, FSB ("AMEX BANK") and AMERICAN

COMPLAINT FOR BREACH OF CONTRACT AND DAMAGES

EXPRESS CENTURION BANK ("AMEX CENTURION") are wholly owned subsidiaries of Defendant AMEX CO.  AMEX CO., AMEX BANK, and AMEX CENTURION may be collectively referred to as "AMEX" or 'AMEX DEFENDANTS."

4.     Defendants HARRISON DEFENDANTS and AMEX DEFENDANTS (collectively, "Defendants"), and each of them, were acting in concert with and/or as the agents, servants, joint ventures and/or co-conspirators with each of the remaining Defendants, and each of them ratified, approval of, or endorsed the acts complained against them herein.

5.     Defendants J&SJ HARRISON, and each of them, were acting in concert with and/or as the agents, servants, joint venture and/or co-conspirators with each of the remaining HARRISON DEFENDANTS, and each of them ratified, approved of, or endorsed the acts complained against them herein.

## JURISDICTION AND VENUE

6.     The Court has subject matter jurisdiction over this matter pursuant to 28 USC § 1332 as Plaintiff is a citizen of California and all HARRISON DEFENDANTS are citizens of England and the amount in controversy exceeds $75,000.

7.     The Court has personal jurisdiction over HARRISON DEFENDANTS because the at issue conduct is based on a contract and transaction between Plaintiff and HARRISON DEFENDANTS that was completed within this district that caused injuries in this district.

8.     The Court has personal jurisdiction over AMEX DEFENDANTS because the complained of conduct is based on a contract and transaction between Plaintiff and AMEX DEFENDANTS that was completed within this district that caused injuries in this district.

3

9.    Venue is proper pursuant to 28 USC § 1391 because HARRISON DEFENDANTS and AMEX DEFENDANTS conducted transactions in this district and/or the injuries alleged herein occurred in this district.

## FACTUAL ALLEGATIONS

10.    Plaintiff SCHOENFELD hired Richard Kline as his agent for the purpose of buying and selling vintage musical equipment, including vintage amplifiers; **for the purpose of their business venture, as in the music industry as a whole, vintage equipment is valued for both appearance as well as sound emanating from the vintage equipment.**

11.    From September 1, 2012 through December 31, 2013, Plaintiff acting through Kline initiated multiple purchases of what the MUSIC CO DEFENDANTS described as vintage musical amplifiers ("HARRISON AMPS") from MUSIC CO DEFENDANTS; as to each purchase, Plaintiff chose to deal with MUSIC CO DEFENDANTS as these defendants purported orally and in writing that MUSIC CO DEFENDANTS warrantied each HARRISON AMP purchased and each warranty was backed by a money-back guarantee.

12.    In each instance, Plaintiff through Kline communicated with J&SJ HARRISON in arranging each of the purchases.

13.    In each instance, HARRISON AMPS were to be delivered to Plaintiff's business location in Woodland Hills, Los Angeles County, California.

14.    In each instance, Plaintiff paid for the vintage equipment with one of two American Express cards; one card was issued by Defendant AMEX CENTURION and the other was issued by AMEX BANK.  Both cards were issued to Plaintiff LAWRENCE SHOENFELD, with the billing address in Playa del Rey, Los Angeles County, California.

15.    Though delivery was promised within 2-3 weeks, the FEDEX Trade

4

Center flagged the HARRISON AMPS from HARRISON DEFENDANTS, which Plaintiff believes resulted in an extensive delay in the delivery to Plaintiff. Only after the HARRISON AMPS were received, more than 60 days after ordering, and only after AMEX DEFENDANTS denied Plaintiff's demand that the charges be reversed, did the FEDEX Trade Center inform Plaintiff that delivery was flagged because of a criminal background of MUSIC CO DEFENDANTS and Defendant JUSTIN HARRISON.

16.    During the delay in delivery, Plaintiff continued to communicate with Defendants J&SJ HARRISON concerning the HARRISON AMPS to be delivered and the reason behind the delay in delivery. The parties exchanged hundreds of e-mails and HARRISON DEFENDANTS repeatedly promised new vintage amps.

17.    Once the HARRISON AMPS were received, Plaintiff immediately noticed multiple issues, among other things, with the HARRISON AMPS;

a. the sound that emanated from the HARRISON AMPS was not of a good quality let alone a quality expected from a vintage amplifier.

b. 14 of the 35 HARRISON AMPS were damaged both physically as well as audibly, and were not saleable.

c. of the 35 HARRISON AMPS, 2 amps were not the HARRISON AMPS that Plaintiff contracted to purchase; HARRISON DEFENDANTS advertised one item and then shipped a different item of lesser quality and lesser value.

d. though transactions of vintage musical equipment, including amplifiers, include a provenance so as to confirm the vintage nature of the purchase, no provenance was provided as to any HARRISON AMP received by Plaintiff.

18.    Plaintiff immediately contacted HARRISON DEFENDANTS to exercise Plaintiff's right to return the HARRISON AMPS under the warranty and

guarantee.   HARRISON DEFENDANTS refused at every occasion to stand behind their warranty or to give effect to the guarantee.

19.    When Plaintiff determined the lack of quality of the HARRISON AMPS, Plaintiff knew HARRISON DEFENDANTS would never be able to provide the vintage amplifiers as they had marketed, and no amount of repair work would provide Plaintiff with products that would meet Plaintiff's need for his business model.  While the HARRISON AMPS could be restored to a working condition, the physical condition and audible output would never equal the quality required of vintage amplifiers, which were the only product in which Plaintiff traded.

20.    Plaintiff's agent communicated with Defendants J&SJ HARRISON and MUSIC CO DEFENDANTS in an attempt to invoke the warranties and demand a cancellation of the multiple invoices as part of the money-back guarantees; these Defendants talked to Plaintiff's agent and accepted his invocation of the warranties, but refused to take any action to support Plaintiff or the warranties.

21.    Plaintiff determined the only manner to gain accountability for the misconduct of the HARRISON DEFENDANTS was to use the dispute procedures of AMEX CO to deny HARRISON DEFENDANTS the opportunity to profit from their wrongful conduct.

22.    Plaintiff Schoenfeld then filed disputes with AMEX CO as to six charge amounts, which were ultimately provided reference numbers by AMEX CO as follows; $60,259.42 – Dispute # WU92317, $90,800.97 – Dispute # WR12064, $17,057.03 – Dispute # N138216, $10,284.17 – Dispute # N444389, and $25,680.31 – Dispute # WU91798.

23.    On or about May 22, 2013, AMEX CO finally resolved all of the filed disputes by releasing payments to HARRISON DEFENDANTS.  Despite

6

notification of the warranties and money-back guarantees issued by HARRISON DEFENDANTS, and that HARRISON AMPS could never be restored to the promised condition, AMEX CO rejected the warranties issued by HARRISON DEFENDANTS and, in response to each dispute, dictated that Plaintiff should happily accept the offer from HARRISON DEFENDANTS to attempt to repair the damaged merchandise.

24.    In conducting a supposed investigation, AMEX CO accepted the statements proffered by HARRISON DEFENDANTS and disregarded the information supplied by Plaintiff so as to gain favor (for AMEX CO) with its merchants without regard to the impact on and expense to Plaintiff.

25.    Plaintiff was required to retain multiple counsel, including Bernard C. Jasper to represent its interests as a result of Defendants' defaults. Plaintiff is entitled by statute and/or contractual terms to an award of attorney's fees and costs incurred as a result of such defaults.

## FIRST CAUSE OF ACTION
### (Breach Of Contract Against All Defendants)

26.    Plaintiff repeats and repleads and incorporate herein by this reference the allegations of paragraphs 1 through 25 as though set forth in this Paragraph 26.

27.    Based on advertisements of vintage amplifiers for sale (the HARRISON AMPS) placed by HARRISON DEFENDANTS, Plaintiff entered into an agreement to purchase 35 HARRIOSN AMPS specified by separate invoices.

28.    To further convince Plaintiff to enter into this agreement for the 35 HARRISON AMPS, HARRISION DEFENDANTS offered Plaintiff a warranty on each HARRISON AMP, and a money-back guarantee for each HARRISON AMP.

COMPLAINT FOR BREACH OF CONTRACT AND DAMAGES

**29.**    Plaintiff fully performed his obligations under the agreement, including each of the 35 invoices, in all material respects.

**30.**    HARRISON DEFENDANTS breached the agreement and each of the 35 invoices by reason of the actions set forth, in part, in Paragraphs 20-26 of this Complaint, as will be further delineated at trial.

**31.**    The breaches by HARRISON DEFENDANTS caused Plaintiff damages in an amount in excess of $200,000.00, the exact amount to be proved at trial.

**32.**    By written authorization and direction to make payments to HARRISON DEFENDANTS under the agreement and invoices, AMEX DEFENDANTS joined HARRISON DEFENDANTS and thereby accepted responsibility for the performance of the agreement and each of the invoices, and are jointly and severally liable for the breach of contract.

**33.**    Plaintiff is also entitled to an award of interest from and after the respective payment dates certain, as referenced within the documentation controlled by AMEX DEFENDANTS and HARRISON DEFENDANTS.

## <u>SECOND CAUSE OF ACTION</u>
### <u>(Negligent Misrepresentation Against HARRISON DEFENDANTS and DOES 1-10)</u>

**34.**    Plaintiff repeats and repleads and incorporates herein by this reference the allegations of paragraphs 1 through 33 as though set forth in this Paragraph 34.

**35.**    The true facts were that HARRISON DEFENDANTS wanted to trick Plaintiff into paying for the HARRISON AMPS without any ability to hold HARRISON DEFENDANTS responsible for the poor quality, the physical and audio damage, and other breaches of the agreement and each of the invoices.

8

COMPLAINT FOR BREACH OF CONTRACT AND DAMAGES

36.    Plaintiff justifiably relied on HARRISON DEFENDANTS as HARRISON DEFENDANTS were in a superior position with regards to understanding the quality of the HARRISON AMPS, the provenance or lack thereof for each, the actual possession of the advertised HARRSION AMPS for sale, the ability to stand behind a warranty and/or guarantee, and any and all other such underlying facts affecting HARRISON DEFENDANTS' ability to enter into the agreement and each of the 35 invoices, the ability to issue and stand behind warranties and money-back guarantees for each HARRISON AMP, as well as perform under the agreement and each of the invoices.  Plaintiff had every reason to believe HARRISON DEFENDANTS would comply with the terms and conditions of the agreement.

37.    Plaintiff first learned of Defendants' deceit when the HARRISON AMPS were first received more than 4 weeks later than contracted.  At all times before that event, HARRISON DEFENDANTS continued to promise Plaintiff that performance under the agreement and each of the invoices would be forthcoming and as contracted.  When Plaintiff confronted HARRISON DEFENDANTS about the events raised by the late delivery, HARRISON DEFENDANTS communicated with Plaintiff but refused to honor the issued warranties, and then misled AMEX DEFENDANTS as to the ability and willingness of HARRISON DEFENDANTS to meet their contractual obligations to Plaintiff.

38.    At the time the advertisements, the agreement and issuance of each of the invoices were entered into with HARRISON DEFENDANTS, Plaintiff was ignorant of the falsity of HARRISON DEFENDANTS' intentions. The reliance by Plaintiff on the advertisements, the agreement and each of the invoices with HARRISON DEFENDANTS was justified by the superior positions HARRISON DEFENDANTS enjoyed over Plaintiff.

COMPLAINT FOR BREACH OF CONTRACT AND DAMAGES

39.    It was HARRISON DEFENDANTS' intent, and plan and scheme to place Plaintiff in such a position that whereby HARRISON DEFENDANTS would refuse to pay Plaintiff and leave Plaintiff without any avenues of recovery against HARRISON DEFENDANTS or the HARRISON AMPS, thereby unjustly enriching themselves through the provision of wrongful products and the refusal to honor the guarantee.

41.    HARRISON DEFENDANTS knew or should have known that the representations they were making to Plaintiff as set forth above and to act as contracted were in fact, false.

42.    HARRISON DEFENDANTS made such representations to Plaintiff without any reasonable grounds for believing those representations to be true, and with the intent to induce Plaintiff to enter into the agreement and each of the invoices with HARRISON DEFENDANTS as herein alleged.  Plaintiff justifiably relied on these representations in entering into the agreement and each of the invoices with HARRISON DEFENDANTS.

43.    As a result of HARRISON DEFENDANTS' untrue representations, Plaintiff has been damaged in an amount in excess of $200,000.00 plus interest on the original agreement and each of the invoices, along with all the time and expense spent on the appeal to AMEX and that effort to stop payment to HARRISON DEFENDANTS.

44.    In committing the acts herein alleged, HARRISON DEFENDANTS acted with oppression, fraud, malice and unconscious disregard of the rights of Plaintiff, and Plaintiff is entitled to recovery of punitive damages in an amount to be determined.

10

## THIRD CAUSE OF ACTION

### (Breach Of Contract Against AMEX DEFENDANTS and DOES 1-10)

45.    Plaintiff repeats and repleads and incorporate herein by this reference the allegations of paragraphs 1 through 44 as though set forth in this Paragraph 45.

46.    In approximately 1972, Plaintiff entered into a contract with AMEX whereby Plaintiff agreed to pay all charges he made with the credit facilities AMEX provided, and AMEX agreed to provide him with a process by which AMEX would work with Plaintiff to protect him from fraudulent activities by merchants utilizing AMEX's credit facilities (the "AMEX Agreement"). This protection is found in a written agreement between AMEX and its card holders which AMEX changes at it pleasure and which AMEX remains the primary holder.

47.    Plaintiff fully performed his obligations under the AMEX Agreement, including paying each and every charge associated with his use of the credit facilities and every annual fee charged by AMEX during each of the over 40 years of this contractual relationship.

48.    AMEX DEFENDANTS breached the AMEX Agreement by reason of the actions set forth, in part, in Paragraphs 20-31 of this Complaint, as will be further delineated at trial. Additionally, AMEX DEFENDANTS excessively delayed its contractual process to the point that Plaintiff was denied a fair review and an equitable resolution and failed to comply with its contractual duties in conducting an analysis of Plaintiff's dispute.

49.    The breaches by AMEX DEFENDANTS caused Plaintiff damages in an amount in excess of $200,000.00, the exact amount to be proved at trial.

50.    Plaintiff is also entitled to an award of interest from and after the respective payment dates certain, as referenced within the documentation controlled by AMEX DEFENDANTS.

COMPLAINT FOR BREACH OF CONTRACT AND DAMAGES

## **FOURTH CAUSE OF ACTION**

## **(Breach Of Covenant Of Good Faith And Fair Dealing Against**
## **AMEX DEFENDANTS and DOES 1-10)**

51.    Plaintiff repeats and repleads and incorporates herein by this reference the allegations of paragraphs 1 through 25 and paragraphs 46 through 50 as though set forth in this Paragraph 51.

52.    AMEX DEFENDANTS, recognizing that they had an opportunity to capitalize on Plaintiff's contractual obligations while facilitating a merchant with charges over $200,000 which created a significant revenue stream for AMEX, controlled Plaintiff's complaints such that Plaintiff never received fair consideration for his complaint and AMEX DEFNDANTS never provided an equitable procedure or analysis; simply rejecting Plaintiff's analysis after months of stalling and refusing to comply with AMEX's contractual responsibilities was the most profitable course of action for AMEX DEFENDANTS and solely guided that decision-making process.

53.    AMEX DEFENDANTS, without following its contractual obligations and without providing for a fair process or equitable consideration, rejected Plaintiff's dispute; AMEX DEFENDANTS rejected Plaintiff's claims, rejected HARRISON DEFENDANTS provision of a warranty, rejected the guarantee that HARRISON DEFENDANTS provided and Plaintiff specifically sought to invoke, ordering Plaintiff's charges be paid in full without requiring any hold-back for the repair HARRISON DEFENDANTS  promised to perform all while HARRISON DEFENDANTS refused to perform on the warranty and the guarantee previously provided.

54.    Such action constitutes a tortious and intentional interference with Plaintiff's expectation of a dispute resolution process honoring the concepts of fairness and equitable due process, as well as a revenue-neutral decision making

12

process.

55.    As a result of such tortious acts, Plaintiffs have been damaged in an amount to be proved at trial.

56.    Defendants intentionally, knowingly wantonly and fraudulently violated Plaintiff; rights entitling Plaintiffs to an award of exemplary and punitive damages in an amount to be provided at trial.

## PRAYERS

**Wherefore Plaintiffs pray for the entry of judgment against Defendants as follows:**

### FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS

**1.**    For an award of actual and consequential damages;

**2.**    For an award of interest at the contractual rate according to proof;

**3.**    For an award of attorney fees and costs.

### SECOND CAUSE OF ACTION AGAINST HARRISON DEFENDANTS

**1.**    For an award of general and special damages according to proof;

**2.**    For an award of exemplary and punitive damages.

### THIRD CAUSE OF ACTION AGAINST AMEX DEFENDANTS

**1.**    For an award of actual and consequential damages;

**2.**    For an award of interest at the contractual rate according to proof;

**3.**    For an award of attorney fees and costs.

### FOURTH CAUSE OF ACTION AGAINST AMEX DEFENDANTS

**1.**    For an award of general and special damages according to proof;

**2.**    For an award of exemplary and punitive damages.

### ALL CAUSES OF ACTION AGAINST ALL DEFENDANTS

**1.**    For an award of attorneys' fees;

**2.**    For an award of costs of suit; and

COMPLAINT FOR BREACH OF CONTRACT AND DAMAGES

**3.**    For such other and further relief as the court deems just and proper.


Dated: July 15, 2014                                ADLI LAW GROUP

                                                    By: _____
                                                    Bernard C. Jasper, Esq.
                                                    Attorney for Plaintiff

COMPLAINT FOR BREACH OF CONTRACT AND DAMAGES

1
2

# DEMAND FOR JURY TRIAL

3

Plaintiff Lawrence Schoenfeld hereby demands a trial by jury on all claims so triable.

4
5

Dated:  July 15, 2014

6

Respectfully submitted,
ADLI LAW GROUP P.C.

7
8

Bernard C. Jasper, Esq.
Attorney for Plaintiff
Lawrence Schoenfeld

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

15

COMPLAINT FOR BREACH OF CONTRACT AND DAMAGES